UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESUS TORRES-GONZALES,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>STATE FARM FIRE AND<br>CASUALTY COMPANY,<br><br>　　　　　　Defendant. | CASE NO. C14-1393JLR<br><br>ORDER DENYING SUMMARY JUDGMENT |

## I.　INTRODUCTION

This matter comes before the court on Defendant State Farm Fire and Casualty Company's ("State Farm") motion for summary judgment.  (*See* Mot. (Dkt. # 9).)  This is an insurance case.  State Farm contends that Plaintiff Jesus Torres-Gonzales has forfeited his right to recover under his insurance policy because he did not cooperate with State Farm's investigation into his claim.  Having considered the submissions of the parties,

ORDER- 1

the balance of the record, and the relevant law, and no party having requested oral argument, the court DENIES State Farm's motion for summary judgment.

## II.   BACKGROUND

Mr. Torres-Gonzales was involved in a motor vehicle collision in December, 2011.  (Dougherty Decl. (Dkt. # 17) ¶ 2.)  He claims that the operator of the other motor vehicle was negligent, at fault, and underinsured.  (Compl. (Dkt. # 1) ¶ 4.3-4.4.)  He claims that he suffered injuries to his back, neck, knees, and shoulder as a result of that collision.  (Dougherty Exs. (Dkt. # 17-1) Ex. F ("IME") at 2.)  Mr. Torres-Gonzales eventually reached a settlement with the at-fault driver's insurance carrier for an unknown amount.  (*See* Resp. (Dkt. # 13) at 2; McLellan Decl. (Dkt. # 12) Ex. A[1] ("Denial Letters").)

At the time of the collision, Mr. Torres-Gonzales held an automobile insurance policy from State Farm that included underinsured motorist ("UIM") coverage.  (Compl. ¶ 4.1.)  Mr. Torres-Gonzales filed a claim under the UIM provision and supported this claim with a "demand package" sent to State Farm in August, 2013.  (Resp. at 2.)  Although the exact contents of the original demand are not in the record, it appears that Mr. Torres-Gonzales claimed at least $32,776.35 in medical expenses and $3,424.00 in past lost wages.  (*See* Dougherty Decl. ¶ 2; Dougherty Exs. Ex. C ("Wage Calc."); Plf. Damages Stmt. (Dkt. # 3) at 8.)  The past lost wages corresponded to a period from

---

[1] Ms. McLellan's first declaration (Dkt. # 10) did not attach the exhibits it described.  Ms. McLellan's second declaration (Dkt. # 12) attaches the exhibits, but is not signed by Ms. McLellan.  The court interprets this omission as a clerical oversight, and considers the exhibits as if Ms. McLellan had signed the declaration attaching them.

December 12, 2011, to June 11, 2012. (*See* Wage Calc.) To support his lost wages claim, Mr. Torres-Gonzales provided paystubs from his employment as a construction worker with Mods by Morgan, LLC ("Mods") for September through December, 2011, W2 Wage and Tax Statements from Mods from 2009 through 2011, and his own tax returns from 2009 through 2011. (Dougherty Exs. Ex. A ("Tax Forms").) He also provided two recorded interviews to State Farm. (McLellan Decl. ¶ 3.)

During Mr. Torres-Gonzales' second interview, State Farm's claims representative identified some inconsistencies in his wage documents. (McLellan Decl. Ex. B ("Rec. Stmt.").) First, Mr. Torres-Gonzales' paystubs and W2 forms list a different social security number than his tax returns. (*Id.* at 5; *see also* Tax Forms.) Second, Mr. Torres-Gonzales driver's license apparently states a different address than his W2 statements and tax returns. (*Id.* at 3.) Mr. Torres-Gonzales stated that the social security number on his tax returns was his true social security number. (Rec. Stmt. at 5.) He also stated that he had been using his old address because his boss had not updated his information at work to include his new address. (*Id.*) The claims representative indicated that she would "follow up" once she received more information to help her verify the wage claims. (*Id.* at 7.) It appears that she requested additional paystubs and tax forms from a third, unidentified party in the room, who was presumably Mr. Torres-Gonzales' lawyer.[2] (*Id.*)

---

[2] The transcript reads in full:

 Q: Okay. And we're gonna follow-up on the other questions that are pending after you do some . . .
L: (Inaudible) his paystubs too and . . .
Q: Paystubs and the . . . the tax form, right.

After that interview, Mr. Torres-Gonzales provided State Farm with wage loss documentation from the owner of Mods that corroborated his employment and the hours of work he missed during 2012, as well as a a stipulation and authorized release of employment records that permitted Mods to release Mr. Torres-Gonzales' employment records directly to State Farm.  (*See* Dougherty Exs. Ex. G ("2012 W2"), Ex. B ("Wage Documentation"), Ex. D ("Auth. Release").)  Mr. Torres-Gonzales also submitted to an independent medical examination.  (*See* IME.)

Catherine McLellan, the claims adjuster who handled Mr. Torres-Gonzales' claim, testifies that entries in the claims activity log from October to December 2013 state:  "They are currently making a UIM claim and additional documentation has been requested as well as a follow-up statement taken regarding wage loss, etc."[3]  (McLellan Decl. ¶ 4.)  She further asserts that the entries "indicate" that "tax returns for 2012, paystubs for three months prior to the claimed disability, and follow-up with different information on 2011 tax records and paystubs ha[d] been requested."  (*Id.* ¶ 6.)  She states that the entries continue:  "There is no documentation to support the wage loss they are requesting."  (*Id.*)  She concludes that one entry states:  "Based on the documentation

---

(Rec. Stmt. at 3.)

[3] Instead of providing the claims activity log to the court, State Farm has submitted a declaration by the claims adjuster describing the contents of the log.  (*See* McLellan Decl.)  Although Ms. McLellan's statements about what the claim activity log contains are hearsay, Mr. Torres-Gonzales has not objected.  *See* Fed. R. Evid. 801; (Resp.).  For purposes of this motion, the court assumes without deciding that the log itself would be admissible under the hearsay exception for records of regularly conducted activity.  *See* Fed. R. Evid. 803(6); Fed. R. Civ. P. 56(c)(2).  Accordingly, the court considers the log entries as described by Ms. McLellan.

ORDER- 4

provided and the settlement amount from the underlying carrier, it appears that the insured . . . has been made whole." (*Id.*)

Accordingly, in February, 2014, State Farm sent Mr. Torres-Gonzales a letter informing him that State Farm "had no additional money to offer above what the underlying carrier had paid." (*See* Denial Letters at 1.) State Farm sent Mr. Torres-Gonzales several more letters to that effect, as well as a letter informing him that his request for arbitration was denied because the policy at issue required disputes to be resolved in litigation. (*See id.* at 2-6.)

In response, Mr. Torres-Gonzales filed an action in Washington State court. (Not. of Rem. (Dkt. # 1).) State Farm promptly removed the action to federal court; the case arrived on September 10, 2014. (*See id.*) Less than one month later, State Farm moved for summary judgment. (*See* Mot.) As of the date of this order, a discovery schedule has yet to be set, and the deadline for initial discovery disclosures has not passed. (*See* 9/18/14 Ord. (Dkt. # 7).) Nonetheless, State Farm argues that it is entitled to judgment as a matter of law that Mr. Torres-Gonzales' suit is barred because he failed to cooperate with State Farm's investigation into his claim. (*See* Mot.)

State Farm bases its argument on the following provisions of the insurance policy. First, State Farm's policy requires: "The insured must cooperate with us and, when asked, assist us in: (1) making settlements; (2) securing and giving evidence; and (3) attending . . . depositions, hearings, and trials." (Policy (Dkt. # 16-1) at 2.) Second, a UIM claimant must "provide written authorization for us to obtain: (a) medical bills, (b) medical records, (c) wage, salary, and employment information; and (d) any other

ORDER- 5

information we deem necessary to substantiate the claim." (*Id.* at 3.) "If the holder of the information refuses to provide it to us despite the authorization, then at our request the person making claim or his or her legal representative must obtain the information and promptly provide it to us . . . ." (*Id.*) State Farm's motion for summary judgment is now before the court.

### III. ANALYSIS

**A.  Summary Judgment Standard**

Summary judgment is appropriate only if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, the non-moving party must identify specific facts from which a factfinder could reasonably find in the non-moving party's favor. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In determining whether the factfinder could reasonably find in the non-moving party's favor, "the court must draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**B.   Washington Insurance Law**

Under Washington law, an insured that breaches a cooperation clause may be contractually barred from bringing suit under the policy. *Staples v. Allstate Ins. Co.*, 295 P.3d 201, 205 (Wash. 2013). The burden of proving noncooperation is on the insurer. *Oregon Auto. Ins. Co. v. Salzberg,* 535 P.2d 816 (Wash. 1975). To prevail on this affirmative defense, an insurer must show three things: (1) the insured failed to "substantially comply" with the terms of the cooperation clause; (2) the information at issue was material to the circumstances giving rise to the insurer's liability, (3) the insurer suffered actual prejudiced as a result. *See Pilgrim v. State Farm Fire & Cas. Ins. Co.,* 950 P.2d 479, 483 (Wash. 1997); *Tran v. State Farm Fire & Cas. Co.*, 961 P.2d 358, 363 (Wash. 1998); *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 877 (Wash. 2008). The court does not address the first two prongs because it finds that, even assuming Mr. Torres-Gonzales did not substantially comply with the policy's requirement that he cooperate and, when asked, assist State Farm in securing evidence, (*see* Policy at 2), State Farm has failed to show that it suffered actual prejudice from that breach.

**C.   Actual Prejudice**

A claim of actual prejudice requires "affirmative proof of an advantage lost or disadvantage suffered as a result of the breach, which has an identifiable detrimental

ORDER- 7

1  effect on the insurer's ability to evaluate or present its defenses to coverage or liability."

2  *Staples*, 295 P.3d at 207 (quoting *Tran,* 961 P.2d at 365) (internal punctuation omitted).

3  "The burden of showing the actual prejudice is on the insurer."  *Id.* (citing *Oregon Auto.*

4  *Ins. Co. v. Salzberg*, 535 P.2d 816, 819 (Wash. 1975)).  "Prejudice is an issue of fact that

5  will seldom be established as a matter of law."  *Id.*  Therefore, prejudice will be

6  presumed only in "extreme cases."  *Id.*  (quoting  *Pub. Util. Dist. No. 1 of Klickitat Cnty.*

7  *v. Int'l Ins. Co.*, 881 P.2d 1020, 1029 (Wash. 1994)).

8        State Farm puts forth no affirmative evidence of prejudice.  Instead, it relies on the

9  case *Tran v. State Farm* to argue that prejudice should be presumed as a matter of law.

10  (*See* Mot. at 7 (citing *Tran*, 961 P.2d at 358.)  This reliance is misplaced.

11        In *Tran*, the insured made a claim based on an alleged burglary, but then refused

12  to cooperate with the insurer's investigation:  he failed to provide documentation with his

13  initial claim, delayed the investigation by months, refused to return phone calls, rejected

14  requests for information regarding the allegedly stolen property and his financial records,

15  provided the police and the insurer with different stories as to what occurred on the day

16  of the burglary, and inexplicably withdrew his claim for some items that he initially

17  indicated were stolen.  *Tran*, 961 P.2d at 361, 364.  The court found that, in these

18  circumstances, "the possibility of fraud was distinct."  *Id.* at 365.  The court concluded

19  that the insurer was prejudiced as a matter of law because the insured's refusal to

20  cooperate left the insurer with a "Hobson's choice" of either denying a claim without

21  adequate investigation or paying a suspected fraudulent claim.  *Id.* at 366.

22

Courts, however, "should be careful not to read *Tran* as creating a per se rule that every time an investigation is delayed the insurer can simply deny the claim for noncooperation." *Staples*, 295 P.3d at 210.  Doing so "would undermine the actual prejudice requirement." *Id.*  Accordingly, the Washington Supreme Court has warned that courts "should not allow the result in *Tran* to overshadow the rule established by that case, which is that an insured must show actual prejudice, which is seldom established as a matter of law and requires the insurer to produce affirmative proof of an advantage lost or disadvantage suffered." *Id.* (internal punctuation omitted).  Rather, *Tran* is best interpreted as an example of the type of "extreme facts" sufficient to permit a court to presume prejudice.  *Id.*

With those principles in mind, the court turns to State Farm's assertion that prejudice should be presumed under *Tran*.  The court finds that there are meaningful differences between Mr. Torres-Gonzales' case and *Tran*.  Unlike the insured in *Tran*, Mr. Torres-Gonzales did not refuse wholesale to cooperate with the investigation and did not change his story over the course of the investigation.  Rather, he initially provided documentation supporting his wage claim, and then responded to State Farm's request with additional information.  (*See* Dougherty Decl. ¶ 4.)  All in all, Mr. Torres-Gonzales submitted paystubs from his employment as a construction worker during the three months prior to his accident, W2 forms from that employer from 2009 through 2011, his tax returns from 2009 through 2011, two recorded interviews, a verification of his wage loss claim signed by the owner of the construction company he worked for, a release authorizing his employer to release his employment records directly to State Farm, and an

independent medical examination.  (*See* McLellan Decl. ¶ 3;Tax Forms; 2012 W2; Wage Documentation; Auth. Release;  IME.)  In light of the volume of information provided, the court is not prepared to say that "the possibility of fraud is distinct."  *See Tran*, 961 P.2d at 365.

Moreover, although State Farm raises the specter of fraud obliquely in its briefing, it does not once explain how or why it believed Mr. Torres-Gonzales' claim was fraudulent at the time State Farm denied his claim.  Judging from the focus of the briefing, it appears that, unlike the situation in *Tran*, the validity of the entire claim is not in question.  Although State Farm contends Mr. Torres-Gonzales wage claim was insufficiently documented, State Farm does not dispute the occurrence of the vehicle collision, Mr. Torres-Gonzales' resulting injuries, or medical expenses.

For these reasons, at least on the record currently before the court, State Farm has not shown that this case rises to the level of "extreme facts" sufficient to permit prejudice to be presumed.  *See Staples*, 295 P.3d at 210 (holding that an insured's refusal to provide a statement under oath "does not present extreme facts" where the insured otherwise responded to requests for documents).  As such, *Tran* does not control.

Without a presumption in its favor, State Farm falls short of establishing actual prejudice.  State Farm has identified only two pieces of missing information:  (1) Mr. Torres-Gonzales' 2012 tax documents, and (2) "paystubs from the three month time period prior to plaintiff's claimed disability." (Reply (Dkt. #18) at 2.)  State Farm did receive paystubs from the three months prior to Mr. Torres-Gonzales' vehicle collision on December 10, 2011.  (*See* Tax Forms (paystubs from September through December

ORDER- 10

1  2011).) State Farm now asserts that it actually wanted paystubs "from three months prior
2  to the date of [Mr. Torres-Gonzales'] claimed disability in March 2012. (Reply at 2.) It
3  is unclear why State Farm defines the onset of Mr. Torres-Gonzales' "claimed disability"
4  to be March 2012. The evidence shows that Mr. Torres-Gonzales claimed lost wages for
5  days of work that he missed due to his injuries beginning on December 12, 2011, and
6  continuing through June, 2012. (*See* Wage Documentation (verifying that Mr. Torres-
7  Gonzales missed 39 hours of work in December through March due to medical issues);
8  Dougherty Decl. ¶ 2, Ex. C ("Wage Claim Summary") (faxed to State Farm in March,
9  2013).) State Farm contends that it wanted the paystubs from January to March 2012
10 because Mr. Torres-Gonzales "continued to work after this accident and that is why the
11 paystubs are important." (Reply at 3.) The documentation that Mr. Torres-Gonzales
12 submitted to State Farm, however, shows that he began seeking medical treatment for his
13 injuries as early as December, 2011. (*See* Wage Documentation, Wage Claim Summary.)
14 On summary judgment, "the court must draw all reasonable inferences in favor of the
15 nonmoving party, and it may not make credibility determinations or weigh the evidence."
16 *Reeves*, 530 U.S. at 150. Moreover, although State Farm was authorized to request wage
17 information from Mr. Torres-Gonzales' employer directly, there is no indication that it
18 made any attempt to do so. (*See* Auth. Release.)
19      It is State Farm's burden to set forth "affirmative proof of . . . an identifiable
20 detrimental effect on the insurer's ability to evaluate or present its defenses to coverage
21 or liability." *Staples*, 295 P.3d at 207. On this record, reasonable minds could reach
22 different conclusions as to whether State Farm has carried this burden. This is especially

ORDER- 11

true given that it remains unclear to what extent the wage issue was instrumental in State Farm's decision to deny the entire claim:  missing from the record is information regarding the amount of Mr. Torres-Gonzales' original claim, the percentage of that claim that was attributable to past and future (if any) lost wages, and the amount of the settlement that Mr. Torres-Gonzales received from the at-fault driver.

As the Washington Supreme Court has repeatedly emphasized, "[p]rejudice is an issue of fact that will seldom be established as a matter of law." *See, e.g.*, *Staples*, 295 P.2d at 209; *Mutual of Enumclaw*, 191 P.3d at 876; *Pub. Util. Dist. No. 1*, 881 P.2d at 1030. Although State Farm may eventually prove that it suffered prejudice, as of this date, State Farm has not shown that reasonable factfinders could not find otherwise. *See Staples*, 295 P.2d at 210.  As such, summary judgment is inappropriate. *See Galen*, 477 F.3d at 658.

### IV.   CONCLUSION

For the foregoing reasons, the court DENIES State Farm's motion for summary judgment (Dkt. # 9).

Dated this 3rd day of November, 2014.

　　　　　　　　　　　　　　　　　　　　　／s／ James L. Robart
　　　　　　　　　　　　　　　　　　　　　JAMES L. ROBART
　　　　　　　　　　　　　　　　　　　　　United States District Judge

ORDER- 12